24482. TAYLOR FREEZER SALES COMPANY, INC. et al. v. SWEDEN FREEZER EASTERN CORPORATION.

Argued February 13, 1968—Decided March 7, 1968— Rehearing denied March 21, 1968.

*McCurdy, Candler & Harris, Walter P. McCurdy, Jr., Claude E. Hambrick,* for appellants.

*Wilson, Branch & Wilcox, Michael C. Murphy, F. Frederick Kennedy, Alexander E. Wilson, III, Weekes & Candler, John Wesley Weekes,* for appellee.

Undercofler, Justice. Sweden Freezer Eastern Corporation brought suit against Charles M. Auerhahn to temporarily and permanently enjoin him until April 15, 1969, from soliciting any "soft-serve equipment" business within any of the 152 Rand McNally Basic Trading Areas shown in its petition, which areas

comprise generally the Eastern seaboard of the United States; from assisting or advising others in soliciting or delivering any such equipment to any customer who was such during the period of employment of Auerhahn and contacted by Auerhahn for the plaintiff; from revealing to others the name of any customer of the plaintiff who was a customer at the termination of his employment; from giving any information of or concerning the business transactions of said customers; and from selling directly or indirectly to certain governmental agencies with which he had had dealings as an employee of the plaintiff. Taylor Freezer Sales Co., Inc., Auerhahn's present employer, was also made a party defendant and the plaintiff sought to enjoin it temporarily and permanently from revealing or using any information obtained from Auerhahn concerning trade secrets, transactions and customers obtained by Auerhahn during his employment with the plaintiff.

The employment contract from which this litigation arose provides: "In the event of termination of his employment with the division voluntarily . . . for a period of three (3) years thereafter he will not directly or indirectly engage in the distribution or manufacture of products competitive to those of the division without its written consent in any area in which Sweden Freezer products may be distributed or sold at the time of such termination."

The petition alleges that the plaintiff is a wholly-owned subsidiary of Sweden Freezer Manufacturing Co. which is engaged in the manufacture of machines to produce soft ice cream and related products; that on April 15, 1966, when Auerhahn voluntarily terminated his employment, it was selling and distributing its products in 152 Rand McNally Basic Trading Areas; that Auerhahn was employed as area manager of its New York Division; that he serviced special accounts headquartered in the New York area which purchased Sweden products for use throughout the United States and many foreign countries; that at its expense it provided him with the opportunity to visit and entertain these customers to develop good will for it; that he was assigned to work with various governmental agencies in order to gain their confidence and learn of their product re-

quirements; that because of these customer contacts, he has an unfair advantage when he attempts to sell in competition with plaintiff because of the knowledge he has of its confidential pricing policies and product characteristics; that due to the nature of the soft-serve industry, individual salesmen cover large geographical territories to reach the limited markets for the industry's highly specialized products and the only means by which it can prevent unfair competition by a former sales manager is to contractually prohibit competition in the well-defined geographical areas where Sweden Freezer products are sold; that without its written consent, Auerhahn began employment with Taylor Freezer Sales Co., Inc., a competitor of the plaintiff who had knowledge of the employment contract between them and encouraged him to leave the employ of the plaintiff for the purpose of obtaining trade secrets and sales contacts of the plaintiff; that Auerhahn is engaged directly and indirectly in the distribution and manufacture of products competitive with those of the New York division in areas in which Sweden Freezer products were sold or distributed at the time of termination of the employment contract.

The defendants filed motions to dismiss the petition of the plaintiff which were overruled by the trial judge. After hearing evidence, the trial judge entered an order enjoining the defendant Auerhahn from soliciting any soft-serve equipment business within any of the 152 Rand McNally Basic Trading Areas described in the petition and granted the other prayers of the petition temporarily restraining the defendants as prayed therein.

Taylor Freezer Sales Co., Inc., and Charles M. Auerhahn appeal to this court and enumerate as error the orders of the trial judge denying their motions to dismiss the petition and the injunction prohibiting them from engaging in business and employment in 155 cities in 16 States of the United States. They contend that these orders are illegal, unreasonable, contrary to law and contrary to the public policy of the State of Georgia.

■ Whether the restraints imposed by an employment contract are reasonable is a question of law for determination by the court. The restrictions imposed upon the promisor must

not be larger than necessary for the protection of the promisee. *Rakestraw v. Lanier*, 104 Ga. 188 (30 SE 735, 69 ASR 154). Greater latitude is allowed in those covenants relating to the sale of a business, or dissolution of a partnership than in those covenants ancillary to an employment contract. 17 CJS 636, § 354; *Rakestraw v. Lanier*, supra; *Hood v. Legg*, 160 Ga. 620 (128 SE 891); *J. C. Pirkle Machinery Co. v. Walters*, 205 Ga. 167 (52 SE2d 853). The contract here under consideration provides that the employee will not directly or indirectly engage in the distribution or manufacture of products competitive to those of the company "in any area in which Sweden Freezer products may be distributed or sold at the time of such termination." Such a contract is unreasonable, not necessarily for the protection of the party in whose favor the restraint was imposed, oppressive to the party restrained, and opposed to the interest of the public. *J. C. Pirkle Machinery Co. v. Walters*, supra; *Orkin Exterminating Co. v. Dewberry*, 204 Ga. 794 (51 SE2d 669); *WAKE Broadcasters, Inc. v. Crawford*, 215 Ga. 862 (114 SE2d 26); and *Foster v. Union Central Life Ins. Co.*, 103 Ga. App. 420 (119 SE2d 289).

Therefore, we hold that this contract which attempts to restrict Auerhahn's employment "in any area. in which Sweden Freezer products may be distributed or sold at the time of such termination" is in general restraint of trade and unenforceable.

■ We next consider whether the evidence is sufficient to warrant an injunction on the basis of divulging the plaintiff's trade secrets and confidential information. The evidence shows that Auerhahn has developed customer contacts and good will at the expense of the plaintiff and has an unfair advantage when he attempts to sell in competition with it because of the knowledge he has of its confidential price policies and product characteristics; that he has knowledge of why one supplier's products are used on its equipment rather than another's, of the method of coping with various problems relating to its equipment, of the fact that future ideas of engineering and research are being developed by the plaintiff, of the fact that many "things" on its freezers today are placed there in anticipation of the possible

availability of a particular accessory in the development stage, and that these facts are part of its trade secrets and confidential information.

"In 43 CJS 750, § 148, it is stated: 'A trade secret, within the rules pertaining to the rights which can be protected by injunction, is a plan, process, tool, mechanism, or compound, known only to its owner and those of his employees to whom it must be confided in order to apply it to the uses intended.' In MacBeth-Evans Glass Co. v. Schnelbach, 239 Pa. 76, 85 (86 A. 688, 165 ALR 1459), it was held: 'It may now be accepted as settled law, under the authority of English and American cases, that courts of equity if the facts warrant will restrain an employee from making disclosure or use of trade secrets communicated to him in course of a confidential employment. The character of secrets, if they be peculiar and important to the business, is not material. . . They, however, must be the particular secrets of the complaining employer, not general secrets of the trade in which he is engaged.' See also 28 AmJur 304, § 111. In the instant petition no facts are alleged to show that the defendant became familiar with any trade secrets or confidential information, other than a general knowledge of the plaintiff's business. It is not shown that the plaintiff possesses any trade secrets with respect to its vending machines or other products which are known only to it and not possessed by others engaged in the same type of business. Neither is it shown that its business procedures or methods are peculiar to it and not generally available to all other similar businesses or that it would be injured in any way by a disclosure of such information. In Glucol Manufacturing Co. v. Schulist, 239 Mich. 70 (214 NW 152), it is stated: 'The term "trade secret," as usually understood, means a secret formula or process not patented but known only to certain individuals using it in compounding some article of trade having a commercial value, and does not denote the mere privacy with which an ordinary commercial business is carried on.' The allegations in this case respecting trade secrets and confidential information seem to encompass practically every phase of the plaintiff's business, i.e., customers, equipment, prices, price quotations, new machines, method of doing

business, and procedures. But in none of these does there appear to be any element of secrecy or confidential information that is peculiar to the plaintiff's business and known only to it and its employes. While it has been held that, in seeking relief in equity, a plaintiff would not be required to make public upon the record of the court the complete details of its trade secrets in order to protect them (see 28 AmJur 308, § 115), still, more must be alleged than that the plaintiff has trade secrets; and it must appear that there exists confidential information which is the property of the plaintiff and peculiar to its business, the disclosure or use of which by the defendant would be injurious to the plaintiff. 'A person who leaves the employment of another has a right to take with him all the skill he has acquired, all the knowledge he has obtained, and all the information that he has received, so long as nothing is taken that is the property of the employer. Trade secrets are the property of the employer and cannot be taken or used by the employee for his own benefit, but customers are not trade secrets. Knowledge on the part of the employee concerning the names and addresses of customers is not the property of the employer.' 28 AmJur 306, § 113; 43 CJS 755, § 148 (b). The petition does not allege that the defendant has a list of the plaintiff's customers which he procured while an employee and which he is using to the plaintiff's detriment, and those cases holding such lists to be confidential information are not applicable here. . . The alleged contract signed by the defendant does not prohibit his soliciting his former employer's customers, and in the absence of contractual restraint, equity will not enjoin the mere solicitation of business by a former employee. *Stein v. National Life Assn.*, 105 Ga. 821 (32 SE 615, 46 LRA 150)." *Vendo Co. v. Long*, 213 Ga. 774, 776 (102 SE2d 173).

We hold therefore that the evidence is insufficient to show that the former employer has any trade secrets or confidential information peculiar to its business the disclosure or use of which by the former employee will injure its business.

■ For the reasons given in Divisions 1 and 2, it was error for the trial judge to grant the injunctions.

*Judgment reversed. All the Justices concur.*