## 61171. MONUMENTAL PROPERTIES OF GEORGIA, INC. v. FRONTIER DISPOSAL, INC. et al.

SOGNIER, Judge.

Appellee Frontier Disposal, Inc. (Frontier) is a corporation which designs and sells trash disposal equipment. Its president and sole stockholder, L. C. Ely, designed a unique method of dumping trash into trash compactors. Appellant Monumental Properties of Georgia, Inc. (Monumental) owned and operated approximately 3,000 apartment units in metropolitan Atlanta. In 1974 Frontier contacted Monumental in an attempt to interest them in a new system of garbage disposal. Ely, with the encouragement and assistance of Monumental's representatives, worked on and developed an automatic bottom unloading system of dumping trash into trash compactors. There was no express contractual agreement between Frontier and Monumental; however, after designing the garbage disposal system Frontier was to receive a commission from the manufacturers of the equipment used in the system sold directly to Monumental. Frontier also planned to claim the system as its own and use it as an example for future marketing purposes, although Frontier had no patent on the design. Monumental took bids from

Frontier and several other manufacturers for garbage disposal equipment. Frontier was not the low bidder and Monumental purchased the equipment from another manufacturer and installed a system using Frontier's design and automatic unloading device. Frontier was not compensated for any work done on the system, or for use of the unique design it had developed. Frontier sued Monumental for conversion. The jury returned a verdict of $50,000 in actual damages and $50,000 in punitive damages in favor of Frontier. Monumental appeals.

1. Appellant contends that the trial court erred in failing to instruct the jury that appellee could not recover if it found that appellee was engaged in the unlicensed practice of engineering. It is undisputed that Ely is not a licensed engineer. However, Code Ann. Chapter 84-21 does not apply to engineering which relates to the "design or fabrication of manufactured products." Code Ann. § 84-2125(c). We do not view the design and development of the product in question by Ely as that type of "professional engineering" anticipated by the statute. Thus, this enumeration of error is without merit.

2. Appellant next contends that the trial court erred in charging the jury that appellee could have a "common law patent of an idea"; and that a cause of action could be based on the unauthorized use of appellee's ideas as reflected in his design plans. We agree with appellant that the trial court's charge on common law patent and common law copyright was error.

The trial court's charge, in pertinent part, is as follows: ". . . the Court charges you that an individual has an [inchoate] or common law right to a copyright of his ideas and plans illustrating these ideas, and any unlawful or unauthorized use or conversion of these ideas or plans gives a cause of action to the owner. . . .

"If you find that the plaintiff had a common law copyright in the plan or a common law patent in the idea and that the defendant without authorization converted the plans to their own use, then the plaintiff would be entitled to recover under the evidence and the charge of this Court."

We know of no case law in Georgia which recognizes a common law patent. In fact, the Supreme Court of the United States has stated: "Pursuant to this constitutional authority [Art. I, Sec. 8, ¶ 8 of the United States Constitution], Congress in 1790 enacted the first federal patent and copyright law . . . and ever since that time has fixed the conditions upon which patents and copyrights shall be granted. . . . These laws, like other laws of the United States enacted pursuant to constitutional authority, are the supreme law of the land." Sears, Roebuck & Co. v. Stiffel Co., 376 U. S. 225, 228 (84 SC 784, 11 LE2d

661) (1963). Patent rights exist only by virtue of federal statute. It is undisputed that appellee had no patent on his design. A charge on "common law patent" is an erroneous statement of law.

While our court has referred to a so-called "common law copyright" in *Jones v. Spindel,* 128 Ga. App. 88 (196 SE2d 22) (1973); *Jones v. Spindel,* 122 Ga. App. 390 (177 SE2d 187) (1970); *Jones v. Spindel,* 113 Ga. App. 191 (147 SE2d 615) (1966), we find no authority therefor. In the *Jones* cases, recovery was permissible under theories of contract or quantum meruit, despite the label "common law copyright." Even if such a right existed, there was no evidence that Monumental copied the actual *plans* for the design developed by Frontier, whereas in *Jones,* the plans were either "traced or redrawn with minor changes omitting the Spindel legend." Id. at 90. Copyright law protects the *form* of the idea rather than the idea itself. For a general discussion of patent law and copyright law, see 1 Callmann, Unfair Competition, Trademarks and Monopolies, §§ 16 and 17. Thus, a charge on common law copyright in the instant case was error. The error in the charges on common law patent and common law copyright necessitates a new trial.

3. Appellant also contends that the trial court erred in failing to grant appellant's motion for a directed verdict or judgment n.o.v. because the evidence failed to prove that appellant converted any property belonging to appellee. We do not agree. While it is clear that patent and copyright law do not apply to the facts of this case, we think that appellee has a cause of action for the wrongful misappropriation of his idea.

The trial court charged that " . . . any unlawful or unauthorized use or conversion of these ideas or plans gives a cause of action to the owner." The evidence discloses that Frontier developed the unique garbage disposal system, that there was an understanding between the parties that the system was to be considered a part of a package involving Frontier's bid to supply garbage disposal equipment, and that Ely was relying on the confidential nature of its relationship with Monumental in developing his design. Under the circumstances, Monumental had a duty not to take Frontier's plan and convert it to its own use, thereby causing injury to Frontier.

Our courts have long recognized that an author or inventor has a property right in the product of his mental labors, even though such product is not patentable. The right has been recognized at common law independently of copyright or letters patent. *Stewart v. Hook,* 118 Ga. 445, 447 (45 SE 369) (1903); *Walker v. Berger,* 148 Ga. 326, 331 (96 SE 627) (1918); *Alexis, Inc. v. Werbell,* 209 Ga. 665, 668 (75 SE2d 168) (1953).

Recognition of a cause of action for misappropriation or con-

version of an unpatented or unpatentable idea, however, depends on a number of factors. A property right in the unpatented product is only exclusive until it becomes the property of the public by being placed on the market. *Alexis Inc.,* supra, at 668. There was no evidence here that Frontier's design was available in the marketplace. Next, the duty not to misuse the property of appellee must have arisen out of a contract or some confidential relationship existing between the parties. One who by reason of a confidential business relationship with the discoverer has gained possession of his trade secret, will be restrained from betraying the trust reposed in him by using the knowledge he has thus acquired for his own gain. *Outside Carpets v. Industrial Rug Co.,* 228 Ga. 263, 268, (185 SE2d 65) (1971). The usual situation in which "trade secrets" are protected involve employment contracts where a contract, express or implied, prohibits an employee from divulging his employer's trade secrets. The courts will protect such a secret from divulgence by one who has acquired it through confidential relationships with the discoverer thereof. *Thomas v. Best Mfg. Co.,* 234 Ga. 787, 790 (218 SE2d 68) (1975); see also University Computing Co. v. Lykes-Youngstown Corp., 504 F2d 518 (5th Cir. 1974). We see no reason why the same rule should not apply to this case, since the evidence disclosed that the plan, design and development of the automatic system originated with appellee, and Frontier understood that it divulged its plan in confidence to Monumental. This is especially true where, as here, the information was transmitted and accepted as a part of an agreement that Monumental would have the use of the device in conjunction with appellant's bid to supply the equipment. Such an arrangement could be interpreted by a jury as an implied agreement not to use or divulge the information. Finally, while patents are granted only for a specific length of time, a trade secret is only protected so long as competitors fail to duplicate it by legitimate, independent research. Water Services v. Tesco Chemicals, 410 F2d 163, 172 (5th Cir. 1969). There is no evidence in the record that appellant developed the particular automatic device by its own independent research.

Appellant argues that appellee did not raise the issue of trade secrets prior to the appeal of the case, and cannot now argue this theory on appeal. However, under our system of notice pleading, we view the complaint as stating the essential elements of appellee's cause of action sufficient to apprise appellant as to the nature of the suit so that he could defend it, *Sprewell v. Farmer,* 230 Ga. 297 (196 SE2d 866) (1973), and the evidence sufficient to withstand a directed verdict for appellant.

4. In view of our decision in Division 2 of this opinion, we find it unnecessary to address appellant's other enumerations of error as

the case must be returned to the trial court for a new trial.

*Judgment reversed. Shulman, P. J., and Birdsong, J., concur.*

DECIDED JUNE 9, 1981 —
REHEARING DENIED JUNE 23, 1981

*Emmet J. Bondurant,* for appellant.

*W. E. Zachary, Sr., W. E. Zachary, Jr., Matthew J. Blender,* for appellees.